Case No. 14 as 5183, Jeffrey Cutler, Appellant, v. United States Department of Health and Human Services, et al. Mr. Muse for the Appellant, Ms. Allen for the Appellees. May it please the Court, I'm Robert Muse in the American Freedom Law Center and it's my honor and privilege to represent the Plaintiff Appellant in this case, Mr. Jeffrey Cutler. And I'd like to reserve two minutes of my time for rebuttal. The threshold issue presented today is whether Mr. Cutler has standing to advance this legal challenge to provisions of the Affordable Care Act. And under established law, the answer is clearly yes. The requirements for standing are well known. Plaintiff must allege a personal injury that's fairly traceable to the challenge conduct and likely to be redressed by the request of relief. Mr. Cutler satisfies all three of those requirements in this case. Can you focus in addressing that on standing to raise the equal protection challenge as opposed to the required insurance challenge, the establishment class challenge? Well, the equal protection is related to that because it's the disparate enforcement of the Affordable Care Act. And it's essentially based on where somebody presently might reside, right? How much do you have that is disparate? I mean, the Arkansas policy looks exactly the same to me as the Pennsylvania policy. I'm sorry, Your Honor. The Arkansas policy and the Pennsylvania policy seem to be exactly the same. Neither one mandates that an insurance company continue policies. So how is it disparate? Well, you certainly – and if you take a broader look at this, the transitional policy certainly permits applicable individuals who would otherwise have to have an Affordable Care Act-compliant policy. And if they didn't have that, they'd be subject to penalties. Well, in the state of Pennsylvania, particularly for the case of Mr. Cutler, Mr. Cutler does not – he wasn't able to keep the health care plan that he wanted. And as a result, it was canceled. And because it was canceled, he's now subject to penalties. There are other applicable individuals in the United States who have – who are able to keep their plan, meaning they have a plan that is not compliant with the Affordable Care Act, but yet they are still being subject to penalties. But isn't that – isn't the reason they have a plan and Mr. Cutler doesn't because of the independent decision-making of the insurance company? The fact is the – what is – the requirement is a federal law requirement to have an Affordable Care Act-compliant plan. The law makes it very clear that the Secretary shall enforce that. So it's the – it's ultimately – You have to ask – I want to make sure we stay focused on a legal protection challenge because I didn't see in your complaint a general challenge to the adoption of the transition policy at all. And so, in fact, we're even entertaining legal protection ones out there either, but for purposes – at least was raised below. So put aside any argument about whether there should or should not have been a transitional policy. That's not your case. Right. That's not this complaint. So what I really would like you to focus on is how is Mr. Cutler being treated differently for equal protection purposes from anyone else in the country in a way that is attributable to governmental action rather than independent choice of insurance companies? Right, because the penalties that he is being assessed for not having an Affordable Care Act plan, one that is compliant with the plan, don't come from an insurance company, nor do they come from a state agency. They come from the federal law. And so certainly, in terms of addressability – But who else in the country – so you have to find someone else who is similarly situated who isn't being assessed a penalty. So somebody else who is in a state that followed – that said – made it optional for insurance companies. Right. And the insurance company said, we're not doing it, and yet that person is not getting assessed a penalty. That's how I would understand an equal protection challenge in this context. Have you found somebody who has no insurance because their insurance company said, we're not going to do it even though state exelects us and isn't being assessed a penalty? But I don't think that's the correct analysis, Your Honor. I think that's an equal protection challenge. Well, the equal protection challenge is, right now, look at it from this perspective. You have – Mr. Cutler is an applicable individual who is required to have an ACA-compliant plan, and if he doesn't have that plan, he's subject to penalties under federal law. He's required to have either an ACA-compliant plan or a non-ACA-compliant plan if his insurance company is willing to give it to him, which is an independent decision of the insurance company. But the penalties are accruing because he doesn't have an ACA-compliant plan. The law requires everyone to have an ACA-compliant plan, and that's why he's having penalties. When his insurance plan was canceled, he could not get a non-compliant ACA plan, and he's subject to penalties. He should not be – at a minimum, he should not be subject to those penalties, and that's – the court can redress that injury, certainly. Now, whether – and certainly the Secretary of Department of Health and Human Services is established by federal law. Now, since the ACA was passed, the legal landscape has changed for insurance. Insurance has become nationalized, and the Secretary is the one that shall enforce all the provisions of it. If Mr. Keller was not able to have an ACA-compliant plan, whereas others were able to keep non-ACA-compliant plans without having a penalty, he should not be subject to penalties as a result of his inability to get a – to keep the plan that he wanted based on what the President's promised, which is what was the basis for this transitional plan. There are individuals – now you have a patchwork – I'm sorry, ma'am. I'm sorry. I just wanted to clarify one thing on the record, because as I understood at least the arguments below – and I know it was pro se – his argument there was it was an equal protection problem because Arkansas was requiring insurance companies to give non-compliant plans, consistent with the transition policy, and Pennsylvania wasn't. I want to make sure – I think you agreed, but I don't want to put words in your mouth, that that was his misunderstanding of Arkansas law. In fact, no state in this country has mandated that insurance companies provide non-compliant plans. Is that your understanding of the law? Well, my – no, I – quite frankly, the – what was raised below was – and it was in a motion for summary judgment and then a response, and obviously the government has argued that it's – that it's been waived, and we certainly argue that he still has it available – is that the Affordable Care Act is being enforced in a disparate manner. But he had to give specifics, and his specifics were – There weren't specifics below, Your Honor. When we filed our opening brief – and I – quite frankly, I agree that Arkansas – when you look at what the commissioner of insurance in Pennsylvania said, essentially this transitional policy we think is unconstitutional, the government – federal government is the one who's responsible for enforcing this thing, we're just going to get out of the way. In Arkansas – and certainly there's – I would need to do more development of this on the factual side, but again, we put this case up pro se, but we certainly – we could perhaps remand this – remand this case to – so he can amend his complaint as necessary to flesh out this equal protection claim. But that's – the argument he raised below in his summary judgment was that based on this transitional policy, he attached a copy of the March 11th description of that policy, that now the Affordable Care Act is being enforced in a disparate manner where some individuals have noncompliant complaints. I think you would agree, as a lawyer – which he was not, obviously – as a lawyer, he had to show that there was somebody who was similarly situated to him who was being treated differently to have an equal protection claim. And I would say a person who has a noncompliant plan, they should be subject to penalty, but they're not because of the transitional policy. Now, is he injured by someone else not being subject to a penalty? Well, that's that problem that we raised – that we mentioned on the reply – about the under-inclusive statute, right? Because you can always make that sort of argument for an under-inclusive statute, like the Orr – Kate Orr versus Orr and the others that we cited. But are they – they're not similarly situated because that other person has insurance that's consistent with federal law. No, no, it's – well, it's a noncompliant – it's a noncompliant plan. It's only noncompliant if you're challenging the transitional policy, which you are not. And so we have to take as given. I understand you have other arguments. Maybe that's another case. But we have to take as given that it's ACCA plus the transitional policy, none of which is challenged. That's the governing federal law. And so if he has an insurance policy that complies with ACCA and or transitional policy, that person is in compliance with federal law. And so that person is not similarly situated to your client. Well, I would disagree in this respect, too, Your Honor, because I think the challenge to the transitional policy is essentially an as-applied challenge to how the individual mandate is being applied. He's not challenging the underlying authority, whether it violates separation of powers or, you know, the underlying authority to issue the transitional policy, but the application of the transitional policy has the – has a disparate impact on individuals. But disparate impact is not an equal protection problem. Equal protection requires discriminatory intent and similarly situated individuals. Right, and you have a law that's being enforced unequally, and it's largely dependent upon the state within which a person resides. And we cited that other, you know, the Sons case, that the government can't, you know, affirmatively permit a state or a state government to violate an equal protection. And so you have this – again, you have this patchwork of enforcement of the Affordable Care Act based essentially upon where a person resides. And I do think in Arkansas, when you read what that press release was, there are individuals with noncompliant plans that are able to keep their plan in the state of Arkansas, whereas Mr. Cutler was not, and he's subject to penalty as a result. At a minimum, the penalties create an equal protection problem because there's a disparate enforcement and unequal enforcement of the Affordable Care Act across the board. I just want to make sure that maybe – Your equal protection argument is that the transitional policy violates equal protection clause or that the Affordable Care Act violates equal protection clause? The enforcement of the individual mandate where through the transitional policy, which allows it to be enforced unequally, it's not being enforced across the board to everyone, that creates an equal protection problem. If there were no transitional policy, in your view, the equal protection challenge would go away. You have other challenges, but the equal protection one is simply a product of the transitional policy? Am I understanding this right? Because it's an unequal enforcement of the law, yes. Yes, because of the transitional policy. Yes, because of the transitional policy, how the law is being enforced, it creates an equal protection problem.  And that is an injury that's fairly traceable to that. And if you look at it from standing from an under-inclusive statute perspective, I think he meets that. We're already out of time. Any other questions? We'll give you some time to reply. Ms. Allen? Thank you, Judge Henderson, and may it please the Court. I would just like to clarify the equal protection challenge that's before the Court and what the transitional policy does. Cleanup has claimed that the transitional policy violates equal protection, and what the transitional policy does is HHS adopted a policy whereby health insurance issuers could continue coverage that they otherwise would have canceled because it would have been in violation of circuit market reforms under the Affordable Care Act. And HHS said that it would not enforce those market reforms against the health insurance issuers, and it encouraged states to adopt the same policy. Pennsylvania adopted that policy. So that meant that insurers in Pennsylvania that would have had to cancel their coverage could instead decide to continue that coverage. But plaintiff's health insurance issuer decided not to continue that coverage. So the injury that he's claiming, which is that he owes a tax penalty, is due to the health insurance issuer's decision not to allow him to continue that coverage. It's not attributable to the transitional policy which Pennsylvania adopted. What about your argument on standing as to put aside the transitional policy, just the requirement to have insurance generally to have to comply with the individual insurance requirement? Your Honor, are you referring to the establishment clause challenge? Of course. So, again, the injury the plaintiff claims is that he has to pay the tax penalty. Doesn't that satisfy Article 3? Sorry? That satisfies Article 3? I have to pay it? Religious folks don't. Why doesn't that satisfy standing? No one merits just standing right now. Well, so the injury he claims is having to pay the tax penalty, and that injury is not redressable by the relief he seeks, which is declaring the religious conscience exemption invalid. He asserted in district court that if the religious conscience exemption were invalid, then the individual coverage provision, as well as the entire Affordable Care Act. That's when he got his point about the under-inclusive statutes, right? Then you're going to be in a position, either a severability analysis or congressional action, to decide do we want the statute with or without the religious exemption, or do we need to make it a broader conscientious objector exemption would be an option. We don't know what the remedial response would be, but he's got for Article 3 standing purposes, he said, I'm injured, I'm having to pay something, and person X over there is not, and we're engaged in the exact same behavior of not having insurance. Why isn't that standing? Well, I have two responses to that. First is that in contrast to the state cases that are referenced in plaintiff's reply brief, in this case we think it's very clear that as a matter of federal law, the remedy for invalidating the religious conscience exemption would not be to also invalidate the individual coverage provision. Congress specifically said that the individual coverage provision is essential to the reforms of the Affordable Care Act, and the Supreme Court recognized in NFIB that the purpose of the Affordable Care Act was to increase the number of Americans covered by health insurance and decrease the cost. It's a severability argument, but not an injury argument. Well, we think because of the clear nature of the fact that the religious conscience exemption would be severable, that that makes clear that the particular injury he's claiming here is not redressable. The other response I would have, Your Honor, is just to emphasize how different this case is from the other cases in which courts have considered the Social Security tax exemption that was incorporated in the religious conscience exemption. In those cases, the plaintiff was a member of a religious group or a person who had a conscientious objection to the tax, and so is essentially arguing that the exemption was too limited and should be extended to include their group. But here, that's not the situation that we have, because the plaintiff has no religious objection to insurance. Indeed, he used to have health insurance, and he does not even have a conscientious non-religious objection to health insurance for the same reason. And so we think this case is quite different than the other cases in which courts have reached the merits of this sort of exemption. If the Court has no further questions, then we submit the District Court's decision should be affirmed for the reasons stated in our brief. Thank you. I have one question. If we reach the merits. In Larson, in that footnote that you referenced, the Court is discussing why the statute is facially unconstitutional. But in describing the statute in this footnote, I just want to know what to do with the footnote. Because it says the distinction between different religious organizations, well-established churches, and churches which are new. What do we do with the 1950 cutoff date? Well, Your Honor, first of all, the 1950 cutoff date that's in Section 1402G of the Social Security Tax, that's incorporated by reference, that's really not an issue here because Plaintiff is not someone who is a member of a religion that was established in 1951, and that's claiming that that particular restriction He doesn't have to be in order for his establishment clause claim, does he? I think he does, Your Honor, because if any of the other restrictions, even just the fact that he must be a member of a religious group that has a conscientious objection, if that were valid, he still could not claim the religious conscience exemption. And so he really has... I'm not following that. Sorry. So... In other words, what I am understanding his challenge to be is the statute, on its face, by incorporating the provision of the Social Security Act, which has a cutoff date, is... He doesn't say it this way, but I'm just looking at the way the circuits in your brief are reading Larson, and I just want to understand whether your position, well, your position is that the statute is not facially unconstitutional. That's correct, Your Honor. The Supreme Court in Larson stated that the statute made explicit and deliberate distinctions based on religious denomination. In particular... No, no. See, that's what I want you to focus on. You don't have the footnote in front of you, do you? I can get it. All right. This is Larson. All right. It's footnote number 23. Page 246. Yes. Do you see where the court is describing the statute? Yes. It's not talking about denominations as such. It's just talking about well-established versus new. That's correct. And the legislative history in Larson showed that the state legislature had passed the 51 percent requirement in order to... Right. I understand that. But what I'm trying to understand is, in Larson, is the court saying we conclude the statute is facially unconstitutional because of the legislative history or because the statute is facially a violation? Well, Your Honor, I think that the court reads the statute in light of the legislative history, which it says makes clear that the legislature implemented the 51 percent... So even if the statute has the effect of distinguishing between established and new, there would not be an establishment clause violation? Well, Your Honor, all the courts of appeals should consider a section... I know, and they just parroted the language without much consideration of this description that the Supreme Court has given of what was the problem. Well, I think, Your Honor, later in the Larson opinion, the Supreme Court makes clear that the reason... Let's see. So we really ought not to worry too much about this footnote since the rest of the opinion is clearly talking about denominational distinctions? Well, I don't think it's just about denominations, but the point was that they, on page 254 of the opinion where the court is talking about the fact that the legislature adopted the 51 percent rule in order to have certain religions be tax-exempt and not have to follow these reporting requirements, but to have newly established churches that solicited donations from nonmembers to not allow them to take advantage of the same exemption from the reporting requirements. And so that deliberate... It was on purpose to allow the Catholic Church to be included, but to not allow other more churches that solicited from nonmembers to be included. And so the Supreme Court, looking at that legislative history, determined that the statute was drafted with the, quote, explicit intention of including particular religious denominations and excluding others. So it was facially invalid. I just need to be clear how you're reading, Larson. Sorry, you mean facially invalid as opposed to as applied? I just don't quite understand. I don't think I'm following the question. Well, do you see what I'm concerned about in the footnote? Where the Supreme Court draws the distinction not between the Catholic Church and others, but just between old and new. Well, I think the legislative history maps right on to that distinction because what... In the Larson case. I agree. All right. But just in my hypothetical, ignore the legislative history for a moment. If all you have is what the court thought the problem was, as it's described in this footnote, would we have a problem? I don't think we have a problem here because, as the courts of appeals have explained, the reason for the specific requirements in Section 1402G are to ensure that people who claim the exemption from Social Security and Medicare, that those people are members of groups of religious organizations that will care for their members when they become dependent. So it doesn't cause any change in what standard the court applies, whether it's strict scrutiny as opposed to the lemon test? We do not believe so, Your Honor. As the other courts of appeals have held, the statute serves a secular purpose of ensuring that the people who claim the exemption are cared for, and we think that's just as true here as the Fourth Circuit held. The problem is that there's a separate part of the statute, apart from the 1950 line, that addresses that concern about a history of supporting them. G1D specifically says somebody has to find it's a practice and has been for a period of time which he deems to be substantial for members of such secular division to make provision for their dependent members. So you have a separate provision of the statute that addresses the evidence that they'll take care of members of the faith so that the Social Security, if they don't become public wards and the Social Security system doesn't work the way it's supposed to. So I don't see what the 1950 or the cutoff year for ACCA or for the Social Security Act is doing, what work it's doing, other than distinguishing between old and new. Well, again, we think that those two provisions go hand in hand and serve the same purpose. G1B says B lets a secretary decide a period of time which he or she deems to be substantial, which would be very different than 1950. Congress could have been setting a floor. This was passed in 1965, and so Congress could have been setting a floor that a religious group needed to have been around and doing that for at least 15 years. But, again, just to get back to this case, the plaintiff does not have a religious objection to health insurance. He is not someone who would have standing to challenge this particular requirement because if any of the requirements are valid, he still cannot claim the religious conscience exemption because he doesn't meet the fundamental requirement of having a religious objection to insurance. Because I thought his argument was different, and that was you can't have a statute that says, I get penalized, and that person doesn't for religious reasons, whether you put aside the contours of the religious exemption. You just can't have a statute that makes this differentiation. I think, I guess they'll tell me if I'm wrong, where the penalty turns on whether you're religious or not. Well, Your Honor, the Supreme Court has long recognized that Congress can accommodate religions without violating the Establishment Clause. And even the plaintiff, at page 25 of his brief, recognizes that religious accommodations are permissible. He then goes on to say that this one is not permissible because it, excuse me, he claims that it plainly rewards certain religious beliefs and thus sects over others. But he is not a member of a group with another religious belief or of a sect that's excluded. No, he's a member of a person who's getting treated differently because he's not religious. Whatever the sect or whatever, I'm getting treated differently because I'm not religious. Is that an Establishment Clause problem? Well, I think that's what you need to address. I think that there's a mismatch between the sort of broader argument he seems to be claiming and the legal argument he makes, which is that the exemption distinguishes between religious denominations where he's not a member of one that's excluded in contrast to the other cases addressing 1402G, where the person was a member of a group that they were claiming was excluded. If I understood his argument to be that this is discrimination between religion and irreligion, nonreligion, what would the answer be then? Well, it's the same answer, Your Honor. All of the courts of appeals to consider this exception, and the Supreme Court has also considered the exception in the context of a free exercise challenge, they've all recognized that Section 1402G and the Fourth Circuit recognize that the Religious Conscience Exemption in the Affordable Care Act, that it was enacted to narrowly accommodate religious practices while at the same time ensuring that the people who claim the exemption are cared for. And the exemption in the Affordable Care Act serves the same purpose that Section 1402G has served since 1965 when it was enacted as part of the Social Security Act. And is it your position that the Social Security exemption sort of would function in the same way in that it would, if you didn't, I guess, have your taxes withheld for Social Security, a penalty, although it might be on your employer rather than you. But if you're self-employed, you'd have to pay a penalty. You'd either have to pay the tax, make the payment that the law requires, or pay a penalty, or establish that you fall within this religious exemption. Your Honor, I'm not sure about the specifics of whether there's a penalty for failing to pay Social Security tax, but it is an exemption from paying Social Security taxes. Thank you. Does Mr. Buse have any time? All right, why don't you take two minutes. Thank you, Your Honor. Judge Meletta, you're right. His distinction that he's making for the established class standing is religion versus non-religion. So if... Everson made that point. But we've also learned that he conscientiously objects to having to buy insurance pursuant to the Affordable Care Act subject to penalty but not based on religious grounds. And so it's religion versus religion. Can I ask you just a quick question? If you were right on the establishment clause, would that necessarily invalidate the Social Security exemption, or how would you distinguish? Do they rise or fall together? Because the Supreme Court has told us the Social Security one meets constitutional standards, and the Affordable Care Act just piggybacks right on it. Right, and I think there's a distinction between the Social Security Act and the Affordable Care Act and how they operate. And the case where the Supreme Court addressed 1402G was in the context of a free exercise clause. And I want to get to Judge Rogers. But I just want to make sure I have an answer from you. I don't think necessarily. Okay, and how would you legally distinguish? And I want to get back to Judge Rogers. How would you legally distinguish for establishment class purposes, given what the Supreme Court said in the United States v. Lee, the Social Security amendment? Right, and remember in the United States v. Lee, essentially the court concluded that there was a compelling interest, even though they found that there was a burden on the free exercise, that there was a compelling interest because of the nature of the Social Security system. I know, but we all know now that that's not how, that after the Oregon case, that that's not how free exercise claims are analyzed. But, you know, the Supreme Court hasn't suggested it. They've cited it to Lee since then. They think it's constitutional. But I think that the two types of systems are themselves different. And you made the point about the penalty. I mean, he's going to have a penalty for not having an Affordable Care Act compliant plan, whereas people with religious beliefs can be exempt from that. One of the main things in these cases for upholding the 1402G under the Establishment Clause is the claim that the person who, if you're going to grant that exemption, you have to waive all benefits to Social Security. And so the court has said that shows that it doesn't have the primary effect of advancing or inhibiting religion. You don't have anything near that to a waiver of all benefits. Affordable Care Act incorporates that provision, as I understand it, of the Social Security Act that would require your client to have an opposition to all forms of insurance, whether health or Social Security. If somebody's injured, they take to the hospital. The hospital's going to treat them in the hospital. They're going to have medical care under federal law no matter what. Medical care and insurance are not the same thing. But the fact, what's the benefits that you're, it's the federal benefits. I do think the two systems are different. And I do want to get to Judge Rogers' point because I think it's very important. The only case, as I recall, that addressed the 1402G issue after Larson was the Droz case. And they gave short shrift. Judge, the footnote that you pointed out is exactly right. The court said this isn't simply a facially neutral statute. It makes explicit and deliberate distinctions between different religious organizations. And how did it do that? Based on how they do their charitable donations. If 50% come from members in affiliated organizations, then they have an exemption. They didn't, this provision makes explicit and deliberate distinctions based on religious beliefs and religious tenets. It is far more, it's far less facially neutral than the statute at issue in Larson v. Valenti. It is incomprehensible that these two, that they comply. If Droz just gave it short shrift, Liberty University then just relied on Droz and gave it short shrift, if you read the Larson v. Valenti, it's incomprehensible to conclude that this exemption doesn't make deliberate and express distinctions based on religious beliefs and religious tenets, and that's impermissible. Even this Court's decision in the Priests for Life case with the religious exemption that was involved with the HHS mandate, the Court said made distinctions based on organizational form and purpose, not religious beliefs or donations. Excuse me, I was going to draw your attention to that. But we held in that case as to the regulations that it drew the distinction based on organizational form and purpose, and not religious belief or denomination. Exactly, Your Honor. So that cuts against your argument. No, no, no, Your Honor. That's, what that shows is that it wasn't based, the Court said it wasn't based on religious beliefs or denominations, assuming that if it had, it would violate the Establishment Clause. This exemption expressly states it's based on religious beliefs and religious teachings, specific tenets of religious beliefs. Not even, it's even, like I said, it's even... Where does it say that? The religious exemption? It applies to a member of a recognized religious sect or division who is an adherent of established tenets or teachings of such sect or division. Right. I mean, it's referring specifically to the teachings, the religious teachings, not even to the organization. So it's like the conscientious objector case. Right. You know, in the sense that if you have any religion or anything, and so your point is that it is an Establishment Clause violation to base a distinction on religion versus non-religion. That's your bottom line. That's what the Supreme Court has said in Larson versus, again, I don't see how this can stand in light of Larson versus Valenti. Well, you either... Under Bishop Wilkinson, which held that the Religious Land Use and Institutionalized Persons Act precisely differentiation based on religion. No, I think there's a difference between a general religious accommodation because they apply, you have a penalty or you have some provision that will apply across the board and then somebody can come forward and not based on any specific religious sect or division,  which you could say there's a specific provision that I believe substantially burdens my religious beliefs, and then there's an analysis that the court applies. Okay, but your argument now takes down the Social Security Exemption, too. I don't think it necessarily does, but I think there's a big problem with Larson. I think 1402G has a big problem with Larson versus Valenti. I just want to make sure we understand what the scope of your argument is. Right, but I'm not here to argue for or against 1402G, but I think Larson versus Valenti makes it very difficult to uphold the Affordable Care Act, how it's drafted. Even though it relies on 1402G, I think how it's drafted in the context of health care, I don't see how it stands in light of Larson versus Valenti. All right, thank you.
judges: Henderson, Rogers, Millett